COLUMBUS BAR ASSOCIATION *v.* ASHTON.

[Cite as *Columbus Bar Assn. v. Ashton,*
108 Ohio St.3d 37, 2006-Ohio-78.]

(No. 2005–1168—Submitted August 23, 2005—Decided January 25, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Robert Edwin Ashton of Bexley, Ohio, Attorney Registration No. 0032276, was admitted to the practice of law in Ohio in 1984. On October 11, 2004, relator, Columbus Bar Association, charged respondent with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of misconduct and a recommendation, all of which the board adopted.

Misconduct

{¶ 2} The parties stipulated that while struggling with an addiction to crack cocaine, respondent took unauthorized expense-account advances from his law firm, failed to properly withdraw from a client's case, and failed to disclose to clients that he lacked malpractice insurance.

{¶ 3} In October 1998, respondent was an associate with the law firm of Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A. ("the Climaco firm") in the firm's Columbus office. In November 1998, respondent entered his appearance as counsel, along with the Climaco firm, for Gregory Donchatz, the defendant in a commercial-lease case that had been filed in March 1998, in the Franklin County Municipal Court. Prior to respondent's appearance, Donchatz had been represented in the lease dispute by his brother, Kenneth R. Donchatz.

{¶ 4} In May 1999, the case was transferred, at the plaintiff's request, to the Franklin County Court of Common Pleas. The plaintiff took no further action in the cause until January 23, 2001, when he refiled the case in common pleas court.

{¶ 5} In December 2000, respondent took unauthorized expense-account advances from the Climaco firm. Respondent took these funds while he was impaired due to drug dependency. Respondent told the Climaco firm's managing partner of these advances shortly after he took them and reimbursed the firm.

{¶ 6} Respondent told Robert Casarona, another partner in the Climaco firm, of his drug dependency. The Climaco firm and respondent later agreed that he would resign effective January 1, 2001. Prior to respondent's resignation, Donchatz paid the Climaco firm approximately $5,000 in fees for his services.

{¶ 7} On January 17, 2001, respondent entered an intensive, outpatient substance-abuse treatment program at Talbot Hall at the Ohio State University Hospital. He completed the treatment program on February 26, 2001.

{¶ 8} Respondent notified Donchatz that he had left the Climaco firm, and Donchatz asked respondent to continue representing him in the lease dispute. Respondent agreed; however, he did not disclose to Donchatz his drug addiction and treatment or the circumstances surrounding his resignation from the Climaco firm.

{¶ 9} On February 20, 2001, Casarona filed a motion to withdraw as Donchatz's counsel on the Climaco firm's behalf. Respondent disclosed to Casarona around the same time that he had recently completed a treatment program for his drug dependence. Respondent later appeared at a status conference in Donchatz's case, and in April 2001, the court scheduled a trial for January 29, 2002.

{¶ 10} In May 2001, respondent accepted a job as an editor with Reed Elsevier, a publisher of legal literature. Respondent started his new job on May 29, 2001, and afterward, stopped taking clients. He did, however, accept a $310 payment on May 31, 2001, from Donchatz, which was the only money that Donchatz paid respondent after his resignation from the Climaco firm. Respondent returned the fee with interest after Donchatz filed a grievance with relator.

{¶ 11} In early September 2001, respondent relapsed into drug use. On September 16, 2001, he returned to Talbot Hall for a substance-abuse treatment

program that included some hospitalization. He was discharged three days later, but from October 26 until October 30, 2001, he was hospitalized again. A physician and a psychiatrist determined that respondent was disabled due to his drug dependence. Reed Elsevier approved respondent's application for disability benefits based on this diagnosis.

{¶ 12} On November 8, 2001, respondent entered a residential substance-abuse treatment program. The next day, respondent filed notice of his withdrawal as counsel in Donchatz's case and mailed a copy of the notice to Donchatz's residence. Respondent also mailed a copy of the withdrawal notice to the plaintiff's counsel. Respondent did nothing more to alert Donchatz of his withdrawal or the reason for it.

{¶ 13} Donchatz apparently did not receive a copy of respondent's withdrawal notice and did not realize that respondent had withdrawn from his case. Respondent, however, assumed that Donchatz had received the withdrawal notice and had retained other counsel. He did nothing else in Donchatz's case.

{¶ 14} Together with other lapses, respondent's failure to consult with Donchatz about his withdrawal eventually led to a default judgment against his client. First, the Franklin County Common Pleas Court did not rule on respondent's November 9, 2001 notice of withdrawal. Second, despite Casarona's February 20, 2001 motion to withdraw on behalf of the Climaco firm, the court sent two notices of the upcoming January 29, 2002 trial to Casarona and, by mistake, mailed the notices to the Climaco firm's Cleveland office. The notices were returned as undeliverable. Respondent did not receive any notice of the scheduled trial date.

{¶ 15} When no one appeared at the trial on Donchatz's behalf, the court entered a default judgment against him. The court's February 4, 2002 order established Donchatz's liability only, requiring a further hearing on the issue of the amount of damages. The default judgment entry did not list respondent as counsel of record for the purpose of providing him notice, and no one else contacted Donchatz about defense counsel's failure to appear.

{¶ 16} Meanwhile, in mid-November 2001, respondent was discharged from the residential substance-abuse treatment program and released by his psychiatrist to return to work. Respondent resumed his employment with Reed Elsevier. Respondent thereafter remained in recovery, regularly attending Alcoholics Anonymous ("AA") meetings and actively participating in the Ohio Lawyers Assistance Program ("OLAP").

{¶ 17} While respondent put his life back on track, however, the confusion in Donchatz's case persisted. On February 4, 2002, the court issued an order setting the cause for a damages hearing on March 29, 2002. This time, respondent's name did appear on the court's order as Donchatz's counsel, and he

was listed as having been served with notice. Respondent did not receive a copy of the February 4 court order.

{¶ 18} On March 26, 2002, Donchatz's brother Kenneth entered an appearance as counsel of record in the lease dispute and moved for a continuance of the damages hearing. At some point, respondent heard of trouble in the case and called to inquire about what had happened. He revealed to Kenneth Donchatz around this time the reason for his withdrawal. Kenneth immediately asked respondent for the Donchatz case file, but respondent was unable to locate the file until January 2005, when he finally returned it.

{¶ 19} Upon discovering that neither Donchatz nor his counsel had received notice of the impending damages hearing, the common pleas court granted the motion for a continuance. The parties eventually settled, and the cause was dismissed. The settlement terms were substantially the same as a rejected proposal respondent had offered in 1998.

{¶ 20} In July 2003, respondent agreed to settle Donchatz's malpractice claims against him and later paid $4,500 in exchange for Donchatz's waiver. Respondent learned of Donchatz's grievance after he had agreed to settle.

{¶ 21} Respondent did not carry malpractice insurance after resigning from the Climaco firm, and he did not advise the few clients he had at that time, including Donchatz, that he lacked malpractice insurance. In April 2003, however, respondent sent each of his remaining clients a form that complied with the requirements of DR 1–104(A) to inform them that he did not have malpractice insurance.

{¶ 22} Because respondent had made unauthorized expense-account advances, failed to properly withdraw from Donchatz's case, and failed to disclose his lack of malpractice insurance, the board found, also as stipulated, that he had violated DR 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice), 1–104 (requiring a lawyer without professional-liability insurance to so notify clients), 2–110(A)(2) (prohibiting withdrawal from representation without taking reasonable steps to avoid causing a client foreseeable prejudice), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(1) (requiring a lawyer to seek a client's lawful objectives), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract for professional employment), and 7–101(A)(3) (prohibiting a lawyer from intentionally causing a client damage or prejudice).

Sanction

{¶ 23} In recommending a sanction for this misconduct, the board weighed the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 24} As aggravating features, the board found that respondent had engaged in a pattern of misconduct and had also acted in his own interest by using drugs. BCGD Proc.Reg. 10(B)(1)(b) and (c). As mitigating, the board found that respondent had no prior disciplinary record and had made good faith efforts to rectify the consequences of his misconduct. BCGD Proc.Reg. 10(B)(2)(a) and (c). The board also noted that respondent cooperated with disciplinary authorities and that, according to witnesses, he has a reputation for competence and integrity apart from this misconduct and his problems with drugs. BCGD Proc.Reg. 10(B)(2)(d) and (e).

{¶ 25} In addition, the board considered the mitigating effect of respondent's drug dependency under BCGD Proc.Reg. 10(B)(2)(g), which requires (i) a professional diagnosis of chemical dependence, (ii) a determination that the chemical dependency contributed to cause the misconduct, (iii) certification of successful completion of an approved treatment program, and (iv) a prognosis from a qualified health-care professional or substance-abuse counselor that the attorney will be able to return, with conditions if necessary, to competent, ethical professional practice. The parties stipulated that these requirements were satisfied, and the board noted that respondent's recovery efforts are ongoing, including attending AA meetings two to three times per week since November 2001 and complying with a two-year OLAP Support System Recovery Contract executed on February 26, 2004. Pursuant to this contract, respondent regularly reports to OLAP professionals monitoring his progress.

{¶ 26} The parties suggested a two-year suspension, all stayed on conditions, and the board found this sanction appropriate. The board thus recommended a two-year suspension of respondent's license, with the suspension stayed in full on the following conditions: (1) respondent continues to comply with his OLAP contract for the entire period of the stayed suspension, (2) respondent continues with the medical and psychological treatment necessary to maintain sobriety and mental competence to practice law, and (3) respondent provides comprehensive reports to relator every three months during the term of stayed suspension regarding his compliance with the conditions of the stay.

## Review

{¶ 27} We agree that respondent violated DR 1–102(A)(6), 1–104, 2–110(A)(2), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3) as found by the board. We further agree that the two-year suspension, stayed in full on conditions, is appropriate.

{¶ 28} When the four elements of BCGD Proc.Reg. 10(B)(2)(g) are met, we attribute mitigating effect to the fact that a lawyer suffers from an addiction to drugs just as we do to the fact that a lawyer suffers from alcoholism or a mental disability. Moreover, even when a lawyer has committed serious misconduct in

addition to illegal drug use, we have tempered our disposition when the lawyer has shown a commitment to recovery from drug addiction. See, e.g., *Cuyahoga Cty. Bar Assn. v. Lazzaro*, 98 Ohio St.3d 509, 2003-Ohio-2150, 787 N.E.2d 1182 (one-year suspension, stayed on certain conditions, warranted for lawyer who had accepted cocaine as a legal fee from a client, used the drug, and missed a court appearance the next day and who had failed to file income tax returns for five years). In fact, we gave an attorney one last chance to return to the competent and ethical practice of law based on his renewed dedication to recovery from drug addiction, notwithstanding his previous relapses. *Disciplinary Counsel v. Garrity*, 98 Ohio St.3d 317, 2003-Ohio-740, 784 N.E.2d 691 (lawyer and former pharmacist convicted of stealing prescription drugs for his own use was indefinitely suspended from the practice of law rather than disbarred, despite previous unsuccessful recovery efforts).

{¶ 29} Respondent appropriated money without authority from his law firm, but he returned the funds promptly and paid for the misconduct with loss of his job. He significantly compromised Donchatz's interests, but has settled that malpractice claim. He has also advised his clients that he does not have malpractice insurance. Respondent has rededicated himself to recovery after a relapse and has since succeeded in managing his addiction. These factors, together with the other extenuating circumstances listed by the board, warrant the recommended sanction.

{¶ 30} Respondent is therefore suspended from the practice of law in Ohio for two years. The two-year suspension is stayed on the conditions that (1) respondent continues to comply with his OLAP contract for the two-year period, (2) respondent continues with the medical and psychological treatment necessary to maintain sobriety and mental competence to practice law, and (3) respondent provides comprehensive reports to relator every three months during the term of stayed suspension regarding his compliance with conditions of the stay. If respondent violates the conditions of the stay, the stay shall be lifted, and respondent shall serve the entire two-year suspension.

{¶ 31} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———

Bruce A. Campbell, Bar Counsel, and Jill M. Snitcher McQuain, Assistant Bar Counsel; Schottenstein, Zox & Dunn and Randall S. Arndt; and Denise R. Mathews, for relator.

Kegler, Brown, Hill & Ritter and Geoffrey Stern, for respondent.